# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1897

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Heriberto Gonzales, | * | Southern District of Iowa. |
| | * | |
| Appellant. | * | |
| - - - - - - - - - - - - - - - - - - - - - | * | |
| | * | |
| Iowa Civil Liberties Union, | * | |
| | * | |
| Amicus on behalf of Appellant. | * | |

_____

Submitted:  May 13, 2003

Filed:  August 11, 2003

_____

Before BOWMAN,  HEANEY and BYE, Circuit Judges.

_____

HEANEY, Circuit Judge.

Appellant Heriberto Gonzales was indicted in the United States District Court[1] for conspiring to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1).  Pursuant to a plea agreement, Gonzales pleaded guilty and was sentenced to 151 months imprisonment.  We affirm.

On appeal, Gonzales raises three issues.  First, he argues that the district court violated the Court Interpreters Act, 28 U.S.C. § 1827, when it failed to appoint certified interpreters to assist him during court proceedings.  Second, he claims that the district court violated his Sixth Amendment and due process rights when it failed to provide him with written Spanish translations of various court documents.  Third, he contends that the government violated his rights under the Vienna Convention on Consular Relations by neglecting to inform him of his rights under the Convention and failing to notify the Mexican consulate of his arrest.

## I.  Background

Gonzales is a Mexican national whose native language is Spanish.  He and his co-defendants became involved in a conspiracy to import methamphetamine from Arizona and distribute it in Iowa.  Following his arrest, the district court appointed an attorney to represent him.  On July 25, 2001, Gonzales entered into a plea agreement in which he pleaded guilty to the offense charged.  On March 7, 2002, new counsel was appointed to represent Gonzales pursuant to his request.  On March 27, 2002, Gonzales was sentenced to 151 months in prison.

The record reveals that interpreters were used at many of the court proceedings, including the arraignment, plea hearing, hearing on the motion to appoint substitute counsel, and sentencing hearing.  However, none of the three interpreters appointed

---

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

by the district court was a certified Spanish language interpreter.[2]  There is no record regarding the availability of certified interpreters at the time of Gonzales's proceedings.

## II.  Discussion

### A.  Court Interpreters Act

It is well settled that "[t]he appointment of an interpreter lies within the sound discretion of the trial judge."  United States v. Coronel-Quintana, 752 F.2d 1284, 1291 (8th Cir. 1985) (citing United States v. Tapia, 631 F.2d 1207, 1210 (5th Cir. 1980)).  Once the district court decides to appoint an interpreter, however, it is obligated to follow the mandates of the Court Interpreters Act.

Gonzales contends that the district court violated the requirements of the Court Interpreters Act when it failed to appoint a certified interpreter or to determine whether a certified interpreter was reasonably available before appointing uncertified interpreters for the proceedings.  The relevant statutory language states:

> The presiding judicial officer, with the assistance of the Director of the Administrative Office of the United States Courts, shall utilize the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise qualified interpreter . . . .

---

[2]An examination of the district court's method of appointing interpreters suggests a pattern of failing to utilize certified interpreters.  For example, the office of the district court has apparently relied upon two court staff members, neither of whom is a certified or full-time interpreter, to assist with Spanish-English interpretations.  The record does not reveal why court staff members were used as interpreters when they were not certified.

Court Interpreters Act, 28 U.S.C. § 1827(d)(1).

Because Gonzales failed to raise this issue before the district court, we review for plain error. Fed. R. Crim. P. 52(b); United States v. Thompson, 289 F.3d 524, 526 (8th Cir. 2002) (citing United States v. Olano, 507 U.S. 725, 732-33 (1993)). To constitute plain error, a district court ruling must be (1) an error, (2) which is plain, i.e., clear under current law, and (3) which affects the defendant's substantial rights. Thompson, 289 F.3d at 526; United States v. Montanye, 996 F.2d 190, 192 (8th Cir. 1993). In addition, although Rule 52(b) gives us the discretionary authority to consider plain errors, we exercise that discretion "only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Thompson, 289 F.3d at 526 (citing Olano, 507 U.S. at 732).

Here, the district court's failure to appoint a certified interpreter to assist Gonzales may indeed constitute plain error. The language of the Court Interpreters Act is clear: once a district court decides to use an interpreter, it is obligated to use a certified interpreter, unless a certified interpreter is not reasonably available, in which case another qualified interpreter is to be appointed. 28 U.S.C. § 1827(d)(1); United States v. Paz, 981 F.2d 199, 200 (5th Cir. 1992). The certification requirement of the Act was intended to provide a procedural safeguard for non-native English speaking defendants during legal proceedings. Paz, 981 F.2d at 200 ("The certification process serves as a safeguard to guarantee that the court interpreter is competent."); United States v. Huang, 960 F.2d 1128, 1135 (2d Cir. 1992) ("Implicit in [the qualification] requirement is the notion that the interpreter should be competent to render accurate translations." (quoting United States v. Villegas, 899 F.2d 1324, 1348 (2d Cir. 1990))). In light of the purpose of the Act, the district court's failure to appoint certified interpreters may have needlessly jeopardized Gonzales's right to a fair criminal proceeding.

Adherence to the requirements of the Act is not optional.  However, in the present case the district court disregarded its legal obligation to provide qualified interpreters for Gonzales.  The court's decision to use uncertified interpreters is troubling.  Through an amicus brief, the Iowa Civil Liberties Union (ICLU) advised that the Southern District of Iowa used uncertified interpreters in almost 90% of all proceedings in 2001.[3]  By contrast, the neighboring District of Nebraska employed uncertified interpreters only 12.8% of the time.  Furthermore, according to the ICLU, district courts of the Eighth Circuit used uncertified interpreters approximately 60% of the time in proceedings that required Spanish-English translations.  This represents an unsatisfactory record compared to the national average of 12%.  When district courts, including the Southern District of Iowa, decline to follow the unambiguous language of the Court Interpreters Act, the rights of non-native English speaking criminal defendants may be impermissibly jeopardized.

The Administrative Office of the United States Courts has created processes to facilitate the use of certified interpreters by district courts.  Specifically, the National Court Interpreter Database helps courts locate interpreters in a number of languages, and the Judiciary's Telephone Interpreting Program provides remote interpretation in cases where on-site court interpreters are not available or cost effective.  Due to the availability of these services, it is hard to reconcile the district court's reliance upon court staff members to provide Spanish-English translations.[4]

---

[3]The information presented herein was provided to the ICLU in a telephone interview on October 23, 2002, by Ms. Marijke van der Heide, a Court Interpreter Program Specialist with the Administrative Office of the United States Courts.

[4]For example, the District of Nebraska imports qualified interpreters from outside the state, rather than proceed with unqualified interpreters.

Under our limited plain error review, however, we cannot say that reversal is required. Gonzales has not presented sufficient evidence to demonstrate that the district court's decision to use uncertified interpreters affected his substantial rights. Huang, 960 F.2d at 1136 ("[T]he ultimate question is whether the translator's performance has rendered the [proceedings] fundamentally unfair."). Specifically, Gonzales points to no evidence that his plea agreement was not entered into knowingly, voluntarily and intelligently. United States v. Martinez-Cruz, 186 F.3d 1102, 1104 (8th Cir. 1999). Thus, because Gonzales has failed to show that the district court's asserted error prejudiced him, we decline to reverse his conviction for failure to abide by the Court Interpreters Act. Montanye, 996 F.2d at 193.

## B. Written Translations of Court Documents

Next, Gonzales claims that the district court plainly erred by not providing written translations of the documents involved in his legal proceedings. Again, because the issue was not raised below, we review for plain error. Thompson, 289 F.3d at 526.

Gonzales relies on the district court case of United States v. Mosquera, 816 F. Supp. 168 (E.D.N.Y. 1993), to support his assertion that the court was required to provide him with translated copies of documents. However, we do not read Mosquera that broadly. Mosquera does not stand for the proposition that criminal defendants enjoy a constitutional right to written translations of court documents. Rather, a court may decide to provide written translations in difficult and complicated cases. See, e.g., Mosquera, 816 F. Supp. at 170 (providing written translations of court documents in a complex narcotics and money laundering prosecution with eighteen defendants, each of whom was represented by different counsel). Moreover, Sanders v. United States, 130 F. Supp. 2d 447, 449 (S.D.N.Y. 2001), subsequently declared that "[t]he Constitution does not require that [] information be communicated in writing in a foreign language." Lastly, the Act itself makes no

-6-

mention of a requirement to provide written translations of documents; it is concerned with ensuring that defendants be provided with accurate translations, whether written or oral. This decision can properly be made on a case-by-case basis. Thus, Gonzales has not demonstrated that the district court plainly erred when it failed to provide him with written copies of various court documents.

## C. Vienna Convention on Consular Relations

Finally, we examine Gonzales's assertion that the government violated his rights under the Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77. Gonzales contends that the government wrongly deprived him and the United Mexican States of their notification rights under Article 36 of the Treaty. We are bound by our earlier decision in United States v. Guzman-Landeros, 207 F.3d 1034, 1035 (8th Cir. 2000), which determined that a failure to advise a criminal defendant of the right to consular contact did not constitute a jurisdictional defect; therefore, a knowing and voluntary guilty plea forecloses any claimed error based on a violation of the Vienna Convention. Accordingly, Gonzales is entitled to no relief on his Vienna Convention claim.

## III. Conclusion

It is important in the administration of justice that the provisions of the Court Interpreters Act be followed. The legislature recognized a need for this Act, to ensure that justice is provided to non-native English speaking defendants. The Act obligates district courts to make every effort to use certified interpreters, and we caution district courts that this obligation should not be ignored.

For the foregoing reasons, we decline to reverse Gonzales's conviction.  The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.