**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0522n.06
Filed: July 26, 2006

**No. 03-6678**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES of AMERICA,

    **Plaintiff-Appellee,**

v.

PEDRO GARCIA-PEREZ,
Also Known As JOSE ASTORGA-TORRES,

    **Defendant-Appellant.**

                            /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY**

**BEFORE:    GUY, DAUGHTREY, and CLAY, Circuit Judges.**

    **CLAY, Circuit Judge.** Defendant Pedro Garcia-Perez, also known as Jose Astorga-Torres, appeals the December 19, 2003 judgment of the United States District Court for the Eastern District of Kentucky convicting and sentencing Defendant for illegal re-entry into the United States by an alien who had previously been deported subsequent to a conviction for the commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). For the following reasons, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

On September 4, 2003, a federal grand jury indicted Defendant on one count of illegal reentry by an alien who had been previously deported subsequent to a conviction for commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). On September 12, 2003, Defendant pleaded not guilty to the count. On October 24, 2003, the district court rearraigned Defendant and Defendant pleaded guilty to the count. Defendant did not have a plea agreement with the prosecution, inasmuch as Defendant wished to have the right to appeal his conviction and sentence. On December 12, 2003, Defendant filed a motion to have the district court sentence Defendant below the then-mandatory range provided by the Federal Sentencing Guidelines ("Guidelines"). On December 19, 2003, the district court denied the motion. That same day, the district court sentenced Defendant to ninety-six months imprisonment, the maximum allowed by the Guidelines, and three years of supervised release. On December 29, 2003, Defendant filed a notice of appeal.

### B. FACTS

Defendant is a native and citizen of Mexico. He first came to the United States in 1976, and he eventually settled in the state of Washington. Defendant was first deported from the United States on July 9, 1992, after Defendant was convicted in state court of possession of cocaine. Defendant subsequently returned to the United States and Washington, where, in 1993, he was convicted in state court of delivery of cocaine. After serving a prison term, Defendant was deported on May 25, 1994. Defendant again returned to the United States, this time settling in Kentucky. On

October 23, 1999, Defendant was arrested by state police for criminal trespass. Defendant was subsequently identified as an alien who had been previously deported. Defendant was convicted in federal court of illegal reentry by an alien who had been previously deported subsequent to a conviction for commission of an aggravated felony. After serving his prison term, Defendant was again deported on March 6, 2002. Defendant returned to the United States and Kentucky. On December 12, 2002, Defendant was arrested for striking his girlfriend in the face with a beer can. Defendant was identified as an alien who had been previously deported subsequent to the conviction of an aggravated felony, *i.e.*, the delivery of cocaine in 1993.

## II. DISCUSSION

A.    **THE VIENNA CONVENTION**

1.    **Preservation of the Issue**

Defendant failed to object to the district court's plea colloquy on the ground that the district court failed to inform Defendant of his right to contact his citizen country's consulate. This will affect the standard of review in this case.

2.    **Standard of Review**

Because Defendant failed to object to the plea colloquy, this Court reviews the district court's decision for plain error. *United States v. Denkins*, 367 F.3d 537, 545 (6th Cir. 2004) (citation omitted). Plain error analysis requires four steps:

> First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we

3

must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings.

*United States v. Thomas*, 11 F.3d 620, 630 (6th Cir. 1993).

Defendant bears the burden of demonstrating plain error. *United States v. Abboud*, 438 F.3d 554, 588 (6th Cir. 2006) (citing *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005)). As the Supreme Court explained: "When an appellate court considers error that qualifies as plain, the tables are turned on demonstrating the substantiality of any effect on a defendant's rights: the defendant who sat silent at trial has the burden to show that his 'substantial rights' were affected." *United States v. Vonn*, 535 U.S. 55, 62 (2002) (citation omitted).

### 3. Analysis

The district court did not commit plain error in failing to inform Defendant of his right to contact his citizen country's consulate under the Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261 ("Vienna Convention"). Under this Court's interpretation, the Vienna Convention does not create enforceable individual rights. *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001). Moreover, Defendant has failed to demonstrate how the failure of the district court to inform Defendant of his rights under the Vienna Convention led to an involuntary or unknowing guilty plea, so as to affect Defendant's substantial rights.

### a. Legal Framework

A guilty plea is more than just an admission of guilt; it is a waiver of the constitutional right to a trial by judge or jury. *Brady v. United States*, 397 U.S. 742, 748 (1970). As a result, a defendant must enter a guilty plea knowingly, voluntarily, and intelligently. *Id.* The district court must verify "that the defendant's plea is voluntary and that the defendant understands his or her

4

applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005) (citing *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988)).

The Vienna Convention is a mutilateral treaty that governs the consular relationships between the signatory nations. *Emuegbunam*, 268 F.3d at 388. The relevant portion of the Vienna Convention in the instant case is Article 36, which, in its entirety, states:

Communication and contact with nationals of the sending State[1]

1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:

(a) consular officers shall be free to communicate with nationals of the sending State and to have access to them. *Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State*;

(b) *if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner.* Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. *The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph*;

(c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular

---

[1]The "sending State" is the nation of the arrested individual, whereas the "receiving State" is the arresting nation. *Emuegbunam*, 268 F.3d at 388 n.3.

> officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.
>
> 2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.

Vienna Convention, art. 36 (emphasis supplied).

In *Emuegbunam*, this Court held that the Vienna Convention did not "create a right for a detained foreign national to consult with the diplomatic representatives of his nation that the federal courts can enforce." 268 F.3d at 394. In that case, the defendant, a Nigerian citizen, was arrested for conspiracy to import cocaine into the United States. *Id.* at 384-85. Before trial, the defendant complained that "prosecutors had not honored his rights under the Vienna Convention." *Id.* at 387. The district court ordered the prosecution to contact the Nigerian consulate. *Id.* Both the prosecution and the defendant contacted the Nigerian consulate. *Id.* The defendant asked the Nigerian consulate for assistance in procuring two witnesses and evidence. *Id.* In response, the consulate stated that it could not secure the witnesses in time for the defendant's trial. *Id.* The defendant filed a motion to dismiss the indictment, on the ground that the denial of earlier contact with the Nigerian consulate prejudiced his defense. *Id.* The district court denied the motion. *Id.* Following a trial, the defendant was found guilty of the charge. *Id.* at 385. The defendant appealed, based in part on the claim that the district court violated the Vienna Convention.

This Court affirmed the defendant's conviction. With respect to the defendant's claim under the Vienna Convention, the Court initially noted:

> As a general rule, . . . international treaties do not create rights that are privately enforceable.

6

> A treaty is primarily a compact between independent nations. It depends for the enforcement of its provisions on the interest and honor of the governments which are parties to it. If these fail, its infraction becomes the subject of international negotiations and reclamation, so far as the injured parties choose to seek redress, which may in the end be enforced by actual war. It is obvious that with all this the judicial courts have nothing to do and can give no redress.

*Id.* at 389. The Court then explained that even if the Vienna Convention created enforceable individual rights, the defendant could not seek the remedy of the dismissal of the indictment under the law of this circuit. *Id.* at 390 (citing *United States v. Page*, 232 F.3d 536, 540 (6th Cir. 2000)).

The defendant also sought the remedy of the reversal of his conviction under the Vienna Convention. The Court found that such remedy was also inappropriate, because the Vienna Convention did not create "any judicially enforceable right of consultation between a detained foreign national and the consular representatives of his nation." *Id.* at 391 (citing *United States v. Jimenez-Nava*, 243 F.3d 192, 198 (5th Cir. 2001)). The Court pointed out that the Preamble to the Vienna Convention specifically stated: "[T]he purpose of such privileges and immunities is *not to benefit individuals* but to ensure the efficient performance of functions by consular posts on behalf of their respective States." *Id.* at 392 (alteration in the original) (internal quotation marks and citation omitted). The Court recognized that the Vienna Convention spoke of the detainee having certain rights; however, the Court found:

> [T]hese references are easily explainable. The contracting States are granting each other rights, and telling future detainees that they have a "right" to communicate with their consul is a means of implementing the treaty obligations *as between States*. Any other way of phrasing the promise as to what will be said to detainees would be both artificial and awkward.

7

*Id.* at 392 (quoting *United States v. Li*, 206 F.3d 56, 66 (1st Cir. 2000) (Selya, J. & Boudin, J., concurring)) (internal quotation marks omitted). This Court "conclude[d] that the Vienna Convention does not create in a detained foreign national a right of consular access." *Id.*

The Court also noted that "the State Department has consistently taken the view that the Vienna Convention does not create individual rights." *Id.* In practice, most countries remedy violations of Article 36 with investigations, apologies, and efforts to ensure that future violations do not occur; "[a]pparently, no country remedies violations of the Vienna Convention through its criminal justice system." *Id.* at 392-93 (citing *Li*, 206 F.3d at 65).

In *Sanchez-Llamas v. Oregon*, the Supreme Court did not answer the question of whether the Vienna Convention created enforceable individual rights. — S. Ct. —, 2006 WL 1749688, at *7 (2006). The Supreme Court assumed without deciding that the Vienna Convention did create such rights.[2] *Id.* Thus, *Emuegbunam* remains the controlling law of this Court.

### b. Application to This Case

#### i. Plain Error

The first two steps in the plain error analysis address whether the district court committed error, and whether that error was plain. In our view, the district court did not commit plain error by

---

[2]The holding of *Sanchez-Llamas* does not control the instant case. In *Sanchez-Llamas*, the Supreme Court held that, assuming the Vienna Convention created enforceable individual rights, suppression of evidence via the exclusionary rule was not an appropriate remedy for violation of the Vienna Convention. *Id.* at *11. The Supreme Court's analysis was crafted specifically for the remedy of suppression of evidence via the exclusionary rule, and not for any other form of remedy. *See id.* at *9-11. The Supreme Court also held that a claim under the Vienna Convention was subject to state procedural default rules. *Id.* at *17. The instant case does not involve the suppression of evidence; instead Defendant claims his guilty plea was not knowing, voluntary, or intelligent. Additionally, the instant case does not involve state procedural default.

failing to inform Defendant of his "right" under the Vienna Convention to contact the Mexican consulate. As explained, *supra*, *Emuegbunam* stands for the proposition that a foreign detainee does not have an enforceable individual right to consular access under the Vienna Convention. Defendant may not fault the district court for failing to inform him of a right that he does not have.

Defendant relies heavily on this Court's decision in *Deitz v. Money*, 391 F.3d 804 (6th Cir. 2004), for the proposition that the Vienna Convention creates enforceable individual rights. In that case, this Court remanded to the district court the issue of whether the petitioner's counsel was ineffective for failing to raise a claim based on the authorities failure to notify the Mexican consulate as required under the Vienna Convention. *Id.* at 811. Defendant argues that an implication of this decision is that the Vienna Convention creates enforceable individual rights, such that the district court in *Deitz*, on remand, could have found ineffective assistance of counsel based on counsel's failure to raise this claim. Assuming *arguendo* Defendant's interpretation of *Deitz* is correct, Defendant's argument falls short, however, because:

> It is the well-settled law of this Circuit that a panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.

*LRL Props. v. Portage Metro. Hous. Auth.*, 55 F.3d 1097, 1105 n.2 (6th Cir. 1995). Thus, to the extent *Deitz* conflicts with *Emuegbunam*, *Emuegbunam* controls, as that decision preceded *Deitz*.

Defendant's reliance on *Medellin v. Dretke*, 544 U.S. 660, 125 S. Ct. 2088 (2005), is likewise misplaced. The Supreme Court in that case dismissed a writ of certiorari as improvidently granted. *Id.* at 2089. Defendant relies on language supplied by the dissent to that decision to support his position that the Vienna Convention creates enforceable individual rights; however, that language

9

is not binding on this Court, while *Emuegbunam* is controlling authority. In sum, the district court did not commit plain error by failing to inform Defendant of his right to consular access under the Vienna Convention, because Defendant has no such right.

### ii.    Substantial Rights

Even assuming Defendant has demonstrated plain error, Defendant has failed to demonstrate an effect on his substantial rights. Under this prong of the plain error inquiry, the defendant normally must demonstrate that he was prejudiced in some way by the district court's plain error, in the sense that the error "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). In the instant case, Defendant argues that the district court's plain error resulted in a guilty plea that was not knowing, voluntary, and intelligent. This argument lacks merit. As explained, *supra*, a guilty plea is a waiver of the constitutional right to a trial by a judge or jury; an invalid guilty plea would thus affect the substantial rights of Defendant. Defendant's argument must fail, however, because he never demonstrates the logical connection between the district court's failure to inform Defendant of his right to contact the Mexican consulate and the purported invalidity of the guilty plea. Defendant never explains what information the Mexican consulate could have supplied[3] that was not supplied by Defendant's counsel or the district court, such that the lack of access to that information rendered his guilty plea unknowing, involuntary, or unintelligent. *See United States v. Ademaj*, 170 F.3d 58, 67 (1st Cir. 1999) (rejecting the defendant's claim under the Vienna Convention on the ground that the defendant failed to demonstrate how

---

[3]We will assume that had the district court informed Defendant of his right to contact the Mexican consulate, Defendant would have in fact contacted the Mexican consulate.

contact with his citizen country's consulate would have assisted in his defense). In fact, Defendant fails to allege *any* misunderstanding of any provision of his guilty plea, let alone a misunderstanding that could have been alleviated by contacting the Mexican consulate. In his brief, Defendant does not spare a single word as to how he misunderstood his guilty plea, or how a misunderstanding of the guilty plea rendered said plea unknowing, involuntary, or unintelligent.

Instead of demonstrating any lack of understanding as to his guilty plea, Defendant makes the general argument that the Vienna Convention "assures the pressures inherent in being incarcerated in a foreign country and appearing in judicial proceedings in a foreign tongue are mitigated such that the knowing and voluntary plea can be taken with assurance by the trial court." (Def. Br. 12.) We agree that being incarcerated in the United States may generally create anxiety and pressure for a foreign citizen greater than that created for a United States citizen; however, Defendant has extensive experience with the American criminal justice system. Defendant first came to this country in 1976, and, besides the three previous deportations, Defendant has resided in the United States since that time. According to his presentence report, Defendant has been arrested and convicted thirty-seven times in the United States. Defendant consequently has been imprisoned numerous times. To say that Defendant's incarceration for the charge in the instant case created pressures unique to Defendant's status as a Mexican citizen strains logic; Defendant has resided primarily within the United States for the past twenty years and is well-acquainted with incarceration in this country.

Moreover, even assuming that Defendant was subjected to additional pressure through his incarceration due solely to his status as a Mexican citizen, Defendant fails to demonstrate how

contacting the Mexican consulate would have addressed this additional pressure, such that his guilty plea sans contact with the consulate was unknowing, involuntary, or unintelligent. The Tenth Circuit rejected a similar argument in *United States v. Cazares*, 60 Fed. App'x 223 (10th Cir. 2003) (unpublished decision). In that case, the defendant was a Mexican national who had resided in the United States for twenty years. *Id.* at 225. The defendant pled guilty to a narcotics offense, but later challenged the guilty plea as involuntary due to the district court's failure to inform him of his rights under the Vienna Convention. *Id.* The Tenth Circuit disagreed:

> [The defendant] argues that because he is a foreign national, he lacks an understanding of the criminal justice system in the United States. [The defendant] further argues that his lack of understanding would be remedied by the assistance of the Mexican consulate. This court, therefore, will construe [the defendant's] arguments as a challenge to the plea on the grounds it was not knowingly and voluntarily entered. Although [the defendant] alleges a lack of understanding of the criminal justice system in the United States, [the defendant] fails to allege the particular aspects of his plea that were entered into unknowingly. After reviewing the record, this court concludes that there is nothing in the record indicating [the defendant's] plea was not knowing and voluntary.

*Id.* at 227. Likewise, Defendant fails to point to what exactly he misunderstood with respect to his guilty plea, where such misunderstanding would not have occurred had he spoken with the Mexican consulate. The point is simple: Defendant does not allege any shortcoming of the district court or his counsel with respect to Defendant's understanding of his guilty plea that could have been remedied by contacting the Mexican consulate.

Moreover, not only does Defendant not allege any shortcomings with respect to the district court and his counsel in ensuring Defendant understood his guilty plea, the record affirmatively proves that Defendant in fact understood his guilty plea. As the government notes, the record demonstrates that the district court complied with the requirements of Federal Rule of Criminal

12

Procedure 11. As stated, *supra*, the district court must verify "that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Webb*, 403 F.3d at 378-79. Defendant understood his constitutional right to a trial and the rights attendant to that right; Defendant understood the charge being made against him; Defendant understood the potential punishment that could arise from the guilty plea; and Defendant understood the factual basis of the government's case against him. Indeed, Defendant admitted the factual basis of the government's case. The record amply demonstrates that Defendant knew the nature of the guilty plea, that he voluntarily pled guilty, and that his decision was intelligent. In short, Defendant has failed to demonstrate how the district court's failure to inform him of his right to contact the Mexican consulate caused Defendant's guilty plea to be unknowing, involuntary, or unintelligent so as to affect his substantial rights.

This case is therefore similar to *Breard v. Greene*, 523 U.S. 371 (1998). In that case, the Supreme Court found that, assuming the Vienna Convention created enforceable individual rights, the defendant still failed to demonstrate prejudice:

> Even were [the defendant's] Vienna Convention claim properly raised and proved, it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial. . . . In this action, no such showing could even arguably be made. [The defendant] decided not to plead guilty and to testify at his own trial contrary to the advice of his own attorneys, who were likely far better able to explain the United States legal system to him than any consular official would have been. [The defendant's] asserted prejudice–that had the Vienna Convention been followed, he would have accepted the State's offer to forego the death penalty in return for a plea of guilty–is far more speculative than the claims of prejudice courts routinely reject in those cases w[h]ere an inmate alleges that his plea of guilty was infected by attorney error.

13

*Id.* at 377 (internal citations omitted).

Likewise, in the instant case, Defendant was represented by counsel who most likely knew more about the United States legal system than any Mexican consular official. Moreover, the district court explained Defendant's legal rights and the legal consequences of his actions in pleading guilty. In order to prove prejudice, Defendant must demonstrate that had he contacted the Mexican consulate, his decision to plead guilty would have been affected, such that his guilty plea was not knowing, voluntary, or intelligent. This result is not only speculative but it is also unlikely. Defendant admitted that he was guilty of the crime for which he was charged. When asked if the government would be able to prove its case, Defendant replied, "Yes, of course. Why not, it's true." (J.A. at 48.) Defendant knew that the case against him was strong; there simply is no reason to believe that Defendant would not have pled guilty had he spoken to the Mexican consulate. By pleading guilty, Defendant was able to decrease his base offense level for acceptance of responsibility; by not pleading guilty and going to trial, Defendant would have foregone the decrease in his base offense level and faced a near-certain conviction, as both he and his counsel acknowledged. It bears repeating that Defendant does not allege that the Mexican consulate had information otherwise unavailable to Defendant, and that had Defendant been privy to such information, Defendant would not have pled guilty, despite the higher sentence he faced if he went to trial. Even assuming the district court committed plain error, Defendant has failed to demonstrate that his substantial rights have been affected.

**B.      THE COURT INTERPRETERS ACT**

**1.      Preservation of the Issue**

Defendant did not object to the interpreter he received before the district court. This will affect the standard of review.

## 2.    Standard of Review

Because Defendant did not object to the interpreter he received before the district court, this Court reviews the appointment of the interpreter for plain error. *United States v. Camejo*, 333 F.3d 669, 672 (6th Cir. 2003) (citation omitted); *see also United States v. Gonzales*, 339 F.3d 725, 728 (8th Cir. 2003). Plain error analysis requires four steps, as described in the preceding section. *See Thomas*, 11 F.3d at 630.

Defendant bears the burden of demonstrating plain error. *Abboud*, 438 F.3d at 588 (citation omitted). As the Supreme Court explained: "When an appellate court considers error that qualifies as plain, the tables are turned on demonstrating the substantiality of any effect on a defendant's rights: the defendant who sat silent at trial has the burden to show that his 'substantial rights' were affected." *Vonn*, 535 U.S. at 62 (citation omitted).

## 3.    Analysis

The district court did not commit plain error in their appointment of an interpreter to Defendant. Defendant has failed to demonstrate that the appointed interpreter was in fact a non-certified interpreter. Defendant also has failed to demonstrate any inadequacy of the appointed interpreter's performance such that his guilty plea was unknowing, involuntary, or unintelligent.

### a.    Legal Framework

A guilty plea is more than just an admission of guilt; it is a waiver of the constitutional right to a trial by judge or jury. *Brady*, 397 U.S. at 748. As a result, a defendant must enter a guilty plea

knowingly, voluntarily, and intelligently. *Id.* The district court must verify "that the defendant's

plea is voluntary and that the defendant understands his or her applicable constitutional rights, the

nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding

that the defendant committed the crime charged." *Webb*, 403 F.3d at 378-79 (citation omitted).

The district court must be especially careful in accepting a guilty plea from a defendant who

does not have a firm command of the English language. As the Fifth Circuit recognized:

> The likelihood of imprisonment following a guilty-plea conviction "demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 . . . (1969). The record on appeal must reflect that a defendant was apprised fully of his constitutional rights, and specially instructed on the rights and privileges which he waived by entering the guilty plea. Fed. R. Crim. P. 11(c), (d). *An adequate understanding of the English language is a threshold requirement for a voluntary plea.*

*United States v. Perez*, 918 F.2d 488, 490 (5th Cir. 1990) (emphasis supplied).

In order to insure that defendants who are not sufficiently competent in the English language

understand the judicial proceedings against them, Congress enacted the Court Interpreters Act

("Act"), 28 U.S.C. § 1827 (2006). The Act states, in relevant part:

> The presiding judicial officer, with the assistance of the Director of the Administrative Office of the United States Courts, *shall* utilize the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise qualified interpreter, in judicial proceedings instituted by the United States, if the presiding judicial officer determines on such officer's own motion or on the motion of a party that such party (including a defendant in a criminal case), or a witness who may present testimony in such judicial proceedings--
>
> (A) speaks only or primarily a language other than the English language; or

16

(B) suffers from a hearing impairment (whether or not suffering also from a speech impairment)

so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony.

28 U.S.C. § 1827(d)(1) (emphasis supplied).

### b. Application to This Case

### i. Plain Error

The first two steps in the plain error analysis address whether the district court committed error, and whether that error was plain. The district court has wide discretion in determining whether an interpreter is appropriate in a given case. *United States v. Markarian*, 967 F.2d 1098, 1104 (6th Cir. 1992) (citation omitted). That said, when the district court exercises its discretion and determines an interpreter is appropriate, the district court must follow the strictures of the Act. As the Eighth Circuit noted:

> The language of the Court Interpreters Act is clear: once a district court decides to use an interpreter, it is obligated to use a certified interpreter, unless a certified interpreter is not reasonably available, in which case another qualified interpreter is to be appointed. . . . The certification requirement of the Act was intended to provide a procedural safeguard for non-native English speaking defendants during legal proceedings.

*Gonzales*, 339 F.3d at 728 (internal citations omitted). In *Gonzales*, the Eighth Circuit found that the district court's use of a non-certified interpreter was error, and that the error was plain, under the first two steps of plain error analysis. *Id.* We agree with that analysis; however, in this case, it is unclear from the record whether the interpreter utilized in Defendant's case was in fact a non-certified interpreter. As stated, *supra*, Defendant has the burden to demonstrate plain error.

17

Defendant has not carried this burden, as Defendant has failed to present any evidence that the interpreter in his case was indeed a non-certified interpreter.

### ii. Substantial Rights

Even assuming that the district court appointed a non-certified interpreter, Defendant has failed to demonstrate an effect on his substantial rights. Defendant claims that the lack of a certified interpreter rendered his guilty plea unknowing, involuntary, or unintelligent. As stated, *supra*, a guilty plea is a waiver of the constitutional right to a trial; as a result, an invalid guilty plea would affect the substantial rights of Defendant. Defendant, however, fails to demonstrate how the appointment of the non-certified interpreter caused his guilty plea to be invalid.

From the outset, we note that Defendant does not allege *any* inadequacies as to the performance of the non-certified interpreter. Defendant does not point to any misunderstandings that he had about the guilty plea that resulted from the use of a non-certified interpreter, misunderstandings that would not have occurred had the district court appointed a certified interpreter. Thus, there is no nexus between the district court's plain error and Defendant's argument that the guilty plea was unknowing, involuntary, or unintelligent. We reiterate that Defendant bears the burden on plain error review in demonstrating that his substantial rights have been affected. Defendant has not met this burden; there is simply no evidence in the record that the use of a non-certified interpreter negatively affected Defendant's understanding of the guilty plea, such that the guilty plea was unknowing, involuntary, or unintelligent. As the Eighth Circuit viewed a factually-similar circumstance:

> [T]here is no indication in the record that the interpreters and [the defendant] had
> communication problems, or that any confusion on [the defendant's] part stemmed

18

> from any translation error; the plea hearing transcript supports that [the defendant] ultimately understood his . . . plea and desired the benefits it yielded; and counsel offers no other evidence that the plea was not knowing, voluntary, and intelligent.

*United States v. Aispuro-Guadiana*, 97 Fed. App'x 76, 77 (8th Cir. 2004) (unpublished decision).

Defendant seems to advocate a *per se* rule: if the district court fails to appoint a certified interpreter, a defendant's guilty plea cannot be knowing, voluntary, and intelligent: "The failure of the record to show that a certified interpreter was used makes it impossible for the trial court [to] assure [Defendant's] guilty plea was properly taken . . . ." (Def. Br. 22.) We disagree with this proposed rule. "The purposes of the Act are to ensure that a party has comprehension of the proceedings and to provide the means to communicate effectively with counsel." *United States v. Sanchez*, 928 F.2d 1450, 1455 (6th Cir. 1991) (citation omitted). "[T]he ultimate question is whether the translator's performance has rendered the trial fundamentally unfair . . . ." *United States v. Huang*, 960 F.2d 1128, 1136 (2d Cir. 1992) (citations omitted). Defendant's *per se* rule is therefore not well-taken; this Court must determine whether the use of a non-certified interpreter so subverted the purposes of the Act such that the proceedings against Defendant were fundamentally unfair. Defendant has not raised a single iota of evidence demonstrating that the use of a non-certified interpreter, as opposed to a certified interpreter, affected his guilty plea such that the proceedings against him were fundamentally unfair. In short, Defendant has failed to demonstrate that the use of a non-certified interpreter caused his guilty plea to be unknowing, involuntary, or unintelligent.

## C.    CUMULATIVE ERROR

For the reasons set forth in the preceding sections, Defendant's claim of cumulative error also fails. Defendant asserts that the cumulative impact of the district court's plain errors demonstrates that his guilty plea was unknowing, involuntary, or unintelligent. We disagree. Defendant has failed to demonstrate that the district court committed error, let alone plain error, for his claims under the Vienna Convention and the Court Interpreters Act. *See supra*. Moreover, even assuming plain error under both of these claims, Defendant has provided no evidence that the district court's plain errors affected the validity of his guilty plea. *See supra*. Since Defendant has failed to provide evidence of an effect to his substantial rights under either claim, there is no evidence to cumulate to determine whether, under the totality of the circumstances, Defendant's plea was invalid.

**D.     RESENTENCING**

### 1.     Preservation of the Issue

Defendant did not object to his sentence on the ground that judge-found fact increased his maximum sentence.[4] This will affect the standard of review.

### 2.     Standard of Review

Because Defendant failed to object to his sentence on the ground that judge-found fact increased his maximum sentence, this Court reviews Defendant's sentence for plain error. *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005). This Court engages in a four-step plain error

---

[4]The only objection that Defendant made to his sentence was that he believed that the Guidelines violated the Double Jeopardy Clause of the U.S. Constitution, as the Guidelines "double-counted" because it increased Defendant's base offense level for a crime for which Defendant had already served a term of imprisonment, and the Guidelines also increased Defendant's sentencing range based on Defendant's criminal history. Defendant does not pursue this argument on appeal.

inquiry: (1) whether there was error; (2) whether that error was plain; (3) whether that plain error affected substantial rights; and (4) whether that plain error seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings. *Id.* (citing *Johnson v. United States*, 520 U.S. 461, 466 (1997)).

### 3.     Analysis

The district court did not commit plain error in its sentencing of Defendant.  While the district court treated the Guidelines as mandatory, the record demonstrates that the district court would not have given Defendant a lesser sentence had it treated the Guidelines as advisory.

#### a.     Legal Framework

In *United States v. Booker*, the Supreme Court held that the mandatory scheme under the Guidelines was unconstitutional, as it violated the Sixth Amendment.  543 U.S. 220, 244 (2005). The Court reaffirmed the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000): "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  *Booker*, 543 U.S. at 244.

In order to correct the Guidelines' unconstitutional nature, the Court severed the portion of the federal sentencing statute that called for mandatory application of the Guidelines.  *Id.* at 245-46. Thus, the Guidelines stand on constitutionally firm grounds as advisory rules.  *Id.*

#### b.     Application to This Case

By treating the Guidelines as mandatory when sentencing Defendant, the district court committed error, and that error was plain.  *Barnett*, 398 F.3d at 525-26.  This Court presumes that

the plain error affected Defendant's substantial rights, *see id.* at 527-28, and, if this presumption holds, this Court will also find that such plain error seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings, so as to warrant this Court's discretion in granting relief, *see id.* at 530.

The presumption that the plain error of the district court affected Defendant's substantial rights is rebuttable. "[W]here the trial record contains clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines regime," the presumption that the district court's plain error affected Defendant's substantial rights is destroyed. *Id.* at 529. The record in the instant case contains clear and specific evidence that the district court would not have sentenced Defendant to a lower sentence had it treated the Guidelines as advisory. First, at the sentencing hearing, the district court stated, "The motion to sentence below the Guidelines will be denied. The calculations are correct, they're appropriate, and they conform to the law as it now exists, and so–*as a matter of fact, I was thinking about sentencing above the guidelines.*" (J.A. at 54) (emphasis supplied). Second, the district court commented that "this is the defendant's fourth illegal re-entry into the country and his second federal conviction for this. His criminal history includes violence, a deadly weapon, weapons, drugs, he is an alcoholic and is a danger to the community." (J.A. at 55.) Finally, the district court sentenced Defendant to the maximum sentence then allowable under the Guidelines, ninety-six months.

These facts are clear and specific evidence that the district court would not have given Defendant a lower sentence under an advisory Guidelines scheme. Indeed, we are somewhat puzzled by Defendant's insistence that his case be remanded for resentencing, as it seems clear that

the district court will in all likelihood impose a higher sentence. This case is factually analogous to this Court's decision in *Webb*, where the district court considered an upward departure from the Guidelines, found that the defendant was a "menace" who the community did not want to "have around," and sentenced the defendant to the maximum time allowed under the Guidelines. 403 F.3d at 382. Under such facts, this Court "conclude[d] that this is an exceptional case where the record contains clear and specific evidence that the district court would not have sentenced [the defendant] to a lower sentence under an advisory Guidelines regime." *Id.* at 382-83. Like *Webb*, the instant case presents a situation where "the district court would have imposed the same sentence, if not a lengthier one, had the district court known that it was not bound by the Guidelines." *Id.* at 383. We therefore will not remand this case for resentencing.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.