# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 20, 2012          Decided February 5, 2013

No. 10-3105

UNITED STATES OF AMERICA,
APPELLEE

v.

JOSHUA GODOY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00161-1)

*Jerry Ray Smith*, appointed by the court, argued the cause and filed the briefs for appellant.

*Angela G. Schmidt*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III*, *Elizabeth Trosman*, and *David S. Johnson*, Assistant U.S. Attorneys.

Before: TATEL, GARLAND, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Over the course of four years, Joshua Godoy committed multiple acts of identity theft. He acquired birth dates, social security numbers, and the like from strangers, acquaintances, and even family members. With that information, he drained bank accounts, bought cell phones on others' credit, and had Costco ship him a fifty-inch plasma screen TV. The government caught him, and Godoy quickly pled guilty to the federal crime of mail fraud. *See* 18 U.S.C. § 1341. The district court sentenced him to sixty months in prison followed by thirty-six months of supervised release and ordered him to pay $67,764.33 in restitution to his victims. Godoy appeals his sentence, and we have jurisdiction to hear his appeal pursuant to 18 U.S.C. § 3742(a). We affirm the district court, with one modification.

I

At the outset, the government argues that Godoy's plea agreement waived his right to this appeal. We might agree if we looked only to the language of the plea. Godoy expressly waived "the right to appeal his sentence or the manner in which it was determined pursuant to 18 U.S.C. § 3742, except to the extent that the Court sentences [him] to a period of imprisonment longer than the statutory maximum."[1] Godoy's sentence is well below the twenty-year statutory maximum for mail fraud. *See* 18 U.S.C. § 1341. But in a colloquy during his plea hearing, the district court mischaracterized the meaning of the waiver in a fundamental way: "[Y]ou have given up your right to appeal except should you come to believe after consulting with counsel that the Court has done *something illegal, such as* imposing a period of imprisonment longer

---

[1] 18 U.S.C. § 3742 enables defendants to appeal sentencing decisions, but limits their ability to appeal sentences imposed pursuant to plea agreements.

than the statutory maximum." Transcript of the Plea Hearing at 7 (emphasis added.) Taken for its plain meaning—which is how criminal defendants should be entitled to take the statements of district court judges—the court's explanation allows Godoy to appeal *any* illegal sentence.

The government asks us to interpret the district court's use of "such as" to mean "limited to." We decline to do so. The phrase "such as" typically indicates that enumerated examples are not comprehensive. For instance, when Justice Thomas discusses the "rights enumerated in the Constitution, *such as* the freedom of speech," he is referring to the whole set of enumerated constitutional rights, and not just the one. *McDonald v. City of Chicago*, __ U.S. __, 130 S. Ct. 3020, 3077 n.15 (2010) (Thomas, J., concurring) (emphasis added). Similarly, in the present case, the category of "something illegal" includes the imposition of a sentence that exceeds the twenty-year statutory maximum, but it certainly is not limited to that. Rather, the category of illegal sentences includes the types of statutory and constitutional violations Godoy alleges.

"[C]riminal defendants . . . 'need to be able to trust the oral pronouncements of district court judges.'" *United States v. Wood*, 378 F.3d 342, 349 (4th Cir. 2004) (quoting *United States v. Buchanan*, 59 F.3d 914, 918 (9th Cir. 1995)). That trust is maintained by enforcing their pronouncements in situations like this. As Rule 11(b) of the Federal Rules of Civil Procedure requires,

> Before the court accepts a plea of guilty . . . the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

FED. R. CRIM. P. 11(b). Ideally, such colloquies are straightforward. The court explains the waiver provision, and the defendant demonstrates that he understands and accepts that provision. But when a court mischaracterizes a waiver provision "during this address," a defendant can hardly be taken to comprehend, let alone accept. Here, the district court inaccurately rephrased the written waiver during the colloquy. Therefore, Godoy had no chance to demonstrate that he understood and accepted what it meant.

The government could have objected at the hearing to the district court's mischaracterization, but it did not. As a sister circuit court has held, "[g]iven the district court judge's clear statements at sentencing, the defendant's assertion of understanding, and the prosecution's failure to object, we hold that in these circumstances, the district court's oral pronouncement controls . . . ." *Buchanan*, 59 F.3d at 918. We apply the same reasoning here. Because the district court's oral pronouncement controls, Godoy's appeal is not barred.[2]

II

Turning to the merits of his appeal, Godoy argues that his sentence violates 18 U.S.C. § 3582(a), which prohibits prison time as a means of rehabilitation. *See Tapia v. United States*, __ U.S. __, 131 S. Ct. 2382, 2390 (2011). Godoy also argues that he was given a longer prison term than he would have received had he been wealthier and thus able to more quickly repay the restitution, a disparity that violates the Fifth Amendment. *See Bearden v. Georgia*, 461 U.S. 660 (1983)

---

[2] Godoy offers a number of other arguments in support of his right to bring this appeal. Since we have already decided the question in his favor, we need not address them.

5

(sentencing courts cannot subject defendants to imprisonment simply because they are too poor to pay fines). Additionally, Godoy argues that the district court erred by requiring him to enroll in the Bureau of Prisons Inmate Financial Responsibility Program.

Arguing that he had no meaningful opportunity to challenge the district court's mistakes, Godoy urges us to review his sentence for abuse of discretion. The government maintains that plain error review is required. We need not choose between the two because the sentence withstands scrutiny under both. *See United States v. Rubio*, 677 F.3d 1257, 1260 (D.C. Cir. 2012) ("We need not address the standard of review . . . because there was no error—plain or otherwise—in the proceedings in the district court.").

A

First, we determine that Godoy's § 3582(a) claim fails. When meting out sentences, judges must consider the goals of punishment, deterrence, incapacitation, and rehabilitation. *See* 18 U.S.C. § 3553(a)(2).[3] Current law allows judges to employ

---

[3] Because we refer to § 3553(a) often, it is useful to set forth the relevant portions here:

(a) Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

a wide range of sentencing methods to achieve these goals. Rehabilitation, in particular, may come through employment training, drug addiction treatment, or a stint in a halfway house upon supervised release. *See, e.g.*, 18 U.S.C. §§ 3563(b); 3583(d). But prison time cannot be a means to the end of rehabilitation. The relevant provision in the Sentencing Reform Act of 1984 states:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*.

18 U.S.C. § 3582(a) (emphasis added). As the Supreme Court has explained, § 3582(a) is designed to send a message to sentencing courts: "Do not think about prison as a way to rehabilitate an offender." *Tapia*, 131 S. Ct. at 2390.

Godoy asserts that the district court acted upon just such a forbidden thought, but the record does not support his argument. At sentencing, the district court gave no indication that it thought time in prison would aid Godoy's rehabilitation. After discussing the harms that Godoy had caused his victims, the court stated that it had to "provide

---

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

deterrence" and "send a message" to similar criminals. It also noted that "[i]ncapacitation is one of those things that is important," and that the Guidelines required that the court look at "retribution." The district court further emphasized that it deemed the Guidelines range of thirty-three to forty-one months insufficient punishment. Finally, the district court spent a great deal of time discussing Godoy's history and character—two other § 3553 factors that are unrelated to rehabilitation. *See* 18 U.S.C. § 3553(a).

Of course, the district court discussed the process of rehabilitation—as it should have—but only in connection with elements of Godoy's sentence other than imprisonment. For instance, only *after* it imposed Godoy's sixty months' incarceration did the district court turn to the rehabilitative portions of the sentence, stating, "you will, I recommend, be placed in intensive drug treatment rehab[ during your time in prison]. I am directing that upon your release, you be placed in intensive psychiatric treatment." At no point did the district court suggest that its talk of rehabilitation related to anything other than the treatment of Godoy's mental health and the terms of his supervised release, which is entirely acceptable.

Godoy urges us to disregard what the court said about its purposes in sentencing him and look instead to an administrative form used to report sentences to the United States Sentencing Commission called the Statement of Reasons. District courts are required to complete Statement of Reasons forms by 28 U.S.C. § 994(w)(1):

> The Chief Judge of each district court shall ensure that, within 30 days following entry of judgment in every criminal case, the sentencing court submits to the Commission, in a format approved and required by the Commission, a written report of the sentence, the offense

for which it is imposed, the age, race, sex of the offender, and information regarding factors made relevant by the guidelines. The report shall also include—

. . . .

(B) the written statement of reasons for the sentence imposed (which shall include the reason for any departure from the otherwise applicable guideline range and which shall be stated on the written statement of reasons form issued by the Judicial Conference and approved by the United States Sentencing Commission).

Godoy argues that the Statement of Reasons form provides insight into the district court's mindset at sentencing and vindicates his § 3582(a) claim. Other circuits have struggled with how to weigh the importance of the Statement of Reasons form, *see United States v. Denny*, 653 F.3d 415, 421-22 (6th Cir. 2011), but we need not wade into that murky water. Regardless of the weight we give it, the Statement of Reasons form does not help Godoy's case. To the contrary, the form here is of a piece with the sentencing colloquy.

The first relevant section of the form, Section IV, indicates that the district court imposed a sentence "outside the advisory sentencing guideline system." Because the district court went outside the Guidelines altogether, Section VI of the form asks the district court its reasons for imposing *all* elements of the sentence, not just the prison term. In Section VI, the district court checks boxes that completely describe the various bases for the *entire* sentence. Here, the district court checked the following:

- "the nature and circumstances of the offense and the history and characteristics of the defendant[;]"

- "to afford adequate deterrence to criminal conduct[;]"

- "to protect the public from further crimes of the defendant[;]"

- "to provide the criminal with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[;]"

- "to provide restitution to any victims of the offense . . . ."

Rehabilitation was clearly one basis for the sentence, but there is nothing on the form that indicates that rehabilitation was a factor when the court determined Godoy's *prison time*. The answers the court gave in Section VI of the form explain the entirety of Godoy's outside-Guidelines sentence—supervised release included.

B

Next, Godoy argues that the length of his prison time reflects his poverty and thus violates the due process and equal protection principles of the Fifth Amendment. The district court, he contends, lengthened his time in prison so that he could earn funds to speed the restitution payments he owes his victims. Had he greater wealth with which to make his payments, he argues, his prison term would have been shorter. We need not consider the Fifth Amendment's

application to such treatment. We can find no support for the claim that Godoy's prison term is longer than a wealthy person's term would have been for a similar crime.

The court never drew any link between the goal of restitution and Godoy's prison time. Indeed, the first time the district court even mentioned restitution was *after* it had offered a litany of reasons justifying the length of Godoy's prison term—a litany that did not include restitution. And the district court anticipated that Godoy would be paying his restitution bills long after he leaves prison. He is required to pay those bills at a rate of $25 a month after he is released from prison. Indeed, the district court considered the fact that Godoy "agreed to full restitution" to be a factor in his *favor*, not a factor counseling further imprisonment. There is nothing in the record to suggest that the district court had restitution in mind when it sentenced Godoy to prison.

It would be absurd to think Godoy's meager earning potential in the Bureau of Prisons Inmate Financial Responsibility Program (IFRP) could motivate the district court to keep him in prison. Even if Godoy were to immediately begin earning the highest available Bureau of Prisons wage—$1.15 per hour for a high-level Federal Prison Industries factory job—he would need to work more than twenty years of forty-hour weeks, keeping not a cent for himself, to pay off his restitution order. *See Work Programs*, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/inmate_programs/work_prgms.jsp (last visited Jan. 15, 2013). His entire sentence is fifteen years shorter than even that ambitious payback timeframe. It would be irrational to sentence an offender to prison for the purpose of garnishing his IFRP earnings, and we decline to attribute irrationality to the district court.

Once again, Godoy asks us to look to the Statement of Reasons form to alter our views of what the district court actually said at sentencing about restitution. But again, the Statement of Reasons is unhelpful to Godoy's case. In Section VI of the form, the district court stated that it sought "to provide restitution to any victims of the offense" when it imposed Godoy's sentence. We find that the most plausible reading—indeed, the only rational reading—of this portion of the form is that it refers to the district court's reasons for imposing the *entirety* of Godoy's sentence. Though the form does not provide a space for delineating which portions of the sentence were animated by which reasons, we are confident that the "restitution" reasoning was related to the imposition of the restitution requirements, not to the imposition of prison time.

C

Finally, Godoy argues that the district court erred by stating that he would be required to enroll in the Bureau of Prisons IFRP. Because the government conceded at oral argument that Godoy cannot be ordered to enroll in the IFRP, we hereby modify his sentence to reflect the fact that enrollment is voluntary. *Cf. United States v. Boyd*, 608 F.3d 331, 335 (7th Cir. 2010) (modifying a sentence to clarify that enrollment in the IFRP is voluntary and affirming as modified).

III

As modified, the district court's sentence is affirmed.

*So ordered.*