# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 10, 2016      Decided December 20, 2016

No. 15–3084

UNITED STATES OF AMERICA,
APPELLEE

v.

DEVON CLEVELAND HUNT, ALSO KNOWN AS MAN,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cr-00306-1)

———

*Edward C. Sussman*, appointed by the court, argued the cause and filed the briefs for the appellant.

*Jason B. Feldman*, Assistant United States Attorney, argued the cause for the appellee. *Elizabeth Trosman* and *George P. Eliopoulos*, Assistant United States Attorneys, were with him on the brief.

Before: HENDERSON and PILLARD, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

2

KAREN LECRAFT HENDERSON, *Circuit Judge*: Devon Hunt has a long history of drug dealing. Over the years he has done much of his business at Potomac Gardens, a housing project in southeast Washington, D.C. In this case, he conspired to distribute heroin from there. He pleaded guilty pursuant to a plea agreement in which he anticipatorily waived his right to appeal certain aspects of his sentence. The district court sentenced him to 62 months of imprisonment, to be followed by five years of supervised release. Without saying why, the court conditioned Hunt's supervised release on his staying away from Potomac Gardens. Hunt objected to the condition but not to the lack of explanation.

Hunt now appeals, challenging both the stay-away condition and the district court's failure to explain it. The government argues that Hunt's appeal waiver bars his claims. We disagree. The waiver contains ambiguities that the court compounded during the plea colloquy. We construe the ambiguities against the government, which drafted the plea agreement and provided no clarification during the colloquy. We nevertheless uphold the stay-away condition because Hunt's claims fail on the merits. First, because he did not object to the court's failure to explain the condition, we review his procedural claim for plain error only. To the extent there was a procedural error, it was not plain and did not affect his substantial rights. Second, as a substantive matter, the condition is well within the court's wide discretion. It will sensibly keep Hunt away from a neighborhood in which he has conducted numerous drug deals. And because he neither lives in the neighborhood nor alleges that he has family there, the condition does not unduly restrict his liberty.

# I. BACKGROUND

## A. HUNT'S OFFENSES, PAST AND PRESENT

Hunt has ties with Potomac Gardens but they are not to his credit. In 1987, he conducted at least three heroin deals there. In 1990, he assaulted police officers there. In 1994, he again participated in a series of heroin sales there. In the process, he threatened security guards and told a young child to keep an eye out for police. After he pleaded guilty to conspiracy based on the 1994 conduct, a long jail term kept him away from Potomac Gardens until at least 2006. In June 2009, the D.C. Housing Authority barred him from the complex. He was not deterred: narcotics officers found him at Potomac Gardens just a few months later.

From late 2012 to early 2013, while residing elsewhere, Hunt once again used Potomac Gardens as a base of operations for drug dealing. He repeatedly sold heroin from there through a middleman to a confidential source. The deals involved a total of more than 100 grams of heroin. Based on those deals, the government charged him here with conspiring to distribute and to possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846. It also charged him with six related drug offenses.

## B. THE GUILTY PLEA

Hunt was arrested and agreed to plead guilty to the conspiracy count in exchange for the government's dismissal of the other counts. The parties stipulated to an imprisonment range of 60 to 65 months and a five-year term of supervised release. Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties further agreed that the sentencing range and five-year term of supervised release would bind the district court if it accepted the plea agreement.

Finally, Hunt agreed to waive some of his appellate rights with respect to his sentence. In pertinent part, the appeal waiver stated:

> [Hunt] understands that federal law, specifically 18 U.S.C. § 3742, affords defendants the right to appeal their sentences in certain circumstances. [Hunt] agrees to waive the right to appeal the sentence in this case, including any term of imprisonment, fine, forfeiture, award of restitution, term of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined, except to the extent the Court sentences [Hunt] above the statutory maximum or guidelines range determined by the Court or [Hunt] claims that [he] received ineffective assistance of counsel, in which case [he] would have the right to appeal the illegal sentence or above-guidelines sentence or raise on appeal a claim of ineffective assistance of counsel, but not to raise on appeal other issues regarding the sentencing.

Plea Agreement, Dkt. No. 121 at 8.

The district court held a plea hearing on the same day that Hunt signed the plea agreement. Midway through the hearing, the court told him that "you [are] generally giving up your rights to appeal," with certain "exceptions." Plea Tr. 31 (Aug. 13, 2015). As relevant here, the court said Hunt could appeal if he "think[s] the sentence is illegal or it exceeds the applicable Sentencing Guidelines range or resulted from ineffective assistance of counsel . . . ." *Id*. Later in the

hearing, the court again discussed the appeal waiver but did not suggest, as before, that the waiver permits appeal from an "illegal" sentence. *Id*. at 51. The government did not object to the court's inconsistent characterizations of the waiver or otherwise offer clarification. The court accepted Hunt's guilty plea.

## C. SENTENCING

In a presentencing memorandum, the government emphasized Hunt's "long term connection" to criminal activity at Potomac Gardens and asked the district court to "order as a condition of [his] supervised release that [he] stay away from" the complex. Government's Mem. in Aid of Sentencing, Dkt. No. 136 at 7, 9.

At the sentencing hearing, the government renewed its request for a stay-away condition. In support, it listed the crimes that Hunt committed at Potomac Gardens. The government added that "[h]e hasn't lived there." Sent. Tr. 16 (Nov. 20, 2015). Without disputing the government's recitation—except to say that Hunt lived at Potomac Gardens "at one point"—defense counsel responded that a "stay[-]away order from a particular large area of town is inappropriate," especially because Hunt "knows many people there . . . who have nothing to do with drugs or illegal activity." *Id*. at 24. Defense counsel also suggested that a stay-away condition was unnecessary because Hunt was forbidden "to engage in illegal activities" in any event. *Id*.

Consistent with the plea agreement, the district court sentenced Hunt to 62 months of imprisonment and five years of supervised release. As a condition of that release, the court ordered Hunt to stay away from Potomac Gardens. Specifically, the court stated:

> [W]ithout the prior approval of the U.S. Probation Office, you shall not enter the grounds of the Potomac Gardens housing complex area in Southeast Washington, D.C., or any structure in it, as bounded by the areas of Pennsylvania Avenue, Southeast, to the north; 14th Street, Southeast, to the east; K Street, Southeast, to the south; and 11th Street, Southeast, to the west.

Sent. Tr. 31. The court did not further explain the condition. After imposing sentence, it asked: "Are there any other matters we need to take up, Counsel?" *Id*. at 32-33. Defense counsel responded: "I don't believe so, sir." *Id*. at 33.

## II.  ANALYSIS

As noted, Hunt challenges the stay-away condition and the district court's failure to explain it. Before addressing the merits, we consider whether the appeal waiver bars his claims ab initio.[1]

---

[1] Waiver of appellate rights is a threshold issue but not a jurisdictional one. *United States v. Shemirani*, 802 F.3d 1, 3 & n.1 (D.C. Cir. 2015). We usually address it as an essential gateway to the merits, *see, e.g.*, *United States v. Adams*, 780 F.3d 1182, 1183-84 (D.C. Cir. 2015) (enforcing waiver without considering merits); *United States v. Guillen*, 561 F.3d 527, 529, 532 (D.C. Cir. 2009) (same), but not always, *see, e.g.*, *Shemirani*, 802 F.3d at 3 (rejecting sentencing claims on merits where alleged waiver implicated "difficult" and "unsettled" issues better left for another day); *United States v. Ransom*, 756 F.3d 770, 773 (D.C. Cir. 2014) (taking similar approach). We decide the waiver issue here in the interest of sound judicial administration: the provision in Hunt's plea agreement is one the government uses as a matter of standard practice in this Circuit, Oral Arg. Recording 18:54-19:18, but it is ambiguous for

**A. HUNT'S APPEAL WAIVER DOES NOT UNAMBIGUOUSLY BAR HIS CHALLENGES TO THE STAY-AWAY CONDITION.**

Like a guilty plea more generally, *see United States v. Ruiz*, 536 U.S. 622, 631-32 (2002), an appeal waiver serves the important function of resolving a criminal case swiftly and finally, *see United States v. Hahn*, 359 F.3d 1315, 1318, 1325 (10th Cir. 2004) (en banc) (per curiam). It also gives the defendant "an additional bargaining chip" during plea negotiations and thereby "increases the probability he will reach a satisfactory plea agreement with the Government" in the first place. *United States v. Guillen*, 561 F.3d 527, 530 (D.C. Cir. 2009). We have held that a "knowing, intelligent, and voluntary" appeal waiver, even though "anticipatory," "generally may be enforced." *Id.* at 529. And we ordinarily dismiss an appeal falling within the scope of such a waiver. *See, e.g.*, *United States v. Adams*, 780 F.3d 1182, 1184 (D.C. Cir. 2015); *Guillen*, 561 F.3d at 532; *see also, e.g.*, *United States v. Ortega-Hernandez*, 804 F.3d 447, 452 (D.C. Cir. 2015) (partially dismissing appeal based on waiver); *In re Sealed Case*, 283 F.3d 349, 355 (D.C. Cir. 2002) (same). *But cf. United States v. West*, 392 F.3d 450, 460-61 (D.C. Cir. 2004) (enforcing waiver but affirming district court's judgment rather than dismissing appeal).

But we will not bar the door to a criminal defendant's appeal if his waiver only arguably or ambiguously forecloses his claims. A plea agreement is a contract and so we advert to principles of contract law in interpreting it. *United States v.*

reasons we explain below. We strongly recommend that the government revise the provision. Although we do not purport to dictate particulars, one appropriate revision would be to change the phrase "term of supervised release" to "term or condition of supervised release."

*Henry*, 758 F.3d 427, 431 (D.C. Cir. 2014); *United States v. Jones*, 58 F.3d 688, 691 (D.C. Cir. 1995). Ambiguity in a plea agreement, as in any other type of contract, is construed against the drafter. *Henry*, 758 F.3d at 431; *In re Sealed Case*, 702 F.3d 59, 63 n.2, 65 (D.C. Cir. 2012); *see* RESTATEMENT (SECOND) OF CONTRACTS § 206 (1981) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."). The government drafted Hunt's plea agreement. If the agreement does not unambiguously preclude Hunt from appealing the issues he presents to us, he has not knowingly, intelligently and voluntarily waived them. *In re Sealed Case*, 702 F.3d at 65 (where appeal waiver was "at the very least . . . ambiguous," defendant "did not knowingly waive his right to appeal"); *accord United States v. Binkholder*, 832 F.3d 923, 926 (8th Cir. 2016) (court enforces appeal waiver only if, *inter alia*, "a given appeal is clearly and unambiguously within [its] scope") (internal quotation omitted); *Hahn*, 359 F.3d at 1325 (holding similarly).

Reviewing Hunt's appeal waiver de novo, *see Henry*, 758 F.3d at 431; *Guillen*, 561 F.3d at 531, we conclude that it does not unambiguously foreclose his challenges to the stay-away condition. Like statutory construction, *see, e.g.*, *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009), interpretation of a plea agreement begins with plain language, *see, e.g.*, *Ramsey v. U.S. Parole Comm'n*, 840 F.3d 853, 860 (D.C. Cir. 2016). The key language of the appeal waiver provides that Hunt "agrees to waive the right to appeal the sentence in this case, including any term of imprisonment, fine, forfeiture, award of restitution, term of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined . . . ." Plea Agreement, Dkt. No. 121 at 8.

One reasonable interpretation of the provision is that Hunt waived the right to appeal any aspect of his sentence, including the conditions of supervised release and the manner in which they were imposed. After all, the word "including" is ordinarily illustrative rather than limiting. *See, e.g.*, *Bloate v. United States*, 559 U.S. 196, 206-07 (2010). Also, supervised release and the conditions thereof are part of "the sentence" by statutory default. 18 U.S.C. §§ 3583(a), 3742(a)(3); *see United States v. Higgins*, 739 F.3d 733, 738 & nn.11-12 (5th Cir. 2014).

We are not convinced, however, that the *only* permissible interpretation of the provision is the one set out above or that Hunt read it that way when he signed the plea agreement. He might reasonably have believed that the clauses about his "term of supervised release" and the "authority of the Court to set conditions of release" occupy the field as to supervised release, displacing the more general waiver in that context. *See Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) (ordinarily, "[a] specific provision controls over one of more general application"). And neither clause about supervised release unambiguously bars the claims Hunt advances in this Court.

By waiving his right to appeal any "term of supervised release," Hunt did not necessarily give up the right to appeal a *condition* of such release. True, "term" can mean "condition." BLACK'S LAW DICTIONARY 1698 (10th ed. 2014). But in the context of Hunt's appeal waiver, it more likely connotes "duration." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 2358 (1993). The provision covers "any term of imprisonment . . . [and] term of supervised release." Plea Agreement, Dkt. No. 121 at 8. As the government does not dispute, "term of imprisonment" refers to the duration of Hunt's imprisonment. It likely follows that

"term of supervised release," appearing in the same sentence as "term of imprisonment," refers to the duration of Hunt's supervised release. *See Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164-65 (1985) ("It is logical to assume that the same word has the same meaning when it is . . . used earlier in the same sentence."); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 202(2) (contract "is interpreted as a whole").

Likewise, by waiving his right to challenge the "*authority of the Court* to set conditions of release," Plea Agreement, Dkt. No. 121 at 8 (emphasis added), Hunt did not unambiguously give up the right to appeal the stay-away condition itself. He does not claim that the condition is ultra vires. *Cf. United States v. Malenya*, 736 F.3d 554, 557 (D.C. Cir. 2013). Instead, the gravamen of his appeal is that the condition "was imposed in violation of law," 18 U.S.C. § 3742(a)(1), because the court did not adequately explain it under 18 U.S.C. § 3553(c) and because it is substantively unreasonable under 18 U.S.C. §§ 3553(a) and 3583(d).

Finally, instead of clarifying the plea agreement's ambiguities, the plea colloquy exacerbated them. The district court indicated—without correction or qualification from the government—that one of the "exceptions" to Hunt's "general[]" waiver permits him to appeal if he "think[s] the sentence is illegal . . . ." Plea Tr. 31. Consistent with our analysis above, Hunt might reasonably have understood the court to mean he could appeal a supervised release condition that, in his view, "was imposed in violation of law" because procedurally or substantively erroneous. 18 U.S.C. § 3742(a)(1); *see United States v. Godoy*, 706 F.3d 493, 495 (D.C. Cir. 2013) (in everyday usage, "illegal sentence" means one that is erroneous for legal reasons). A criminal defendant may take a district court's "oral pronouncement" about a written waiver at face value even if it "mischaracterizes" the

waiver, *Godoy*, 706 F.3d at 495-96, and even if the waiver is otherwise unambiguous, *see United States v. Kaufman*, 791 F.3d 86, 88 (D.C. Cir. 2015); *United States v. Wilken*, 498 F.3d 1160, 1167-69 (10th Cir. 2007). *A fortiori*, and especially because the government made no objection and offered no clarification, *see Kaufman*, 791 F.3d at 88; *Godoy*, 706 F.3d at 495, Hunt was entitled to rely on the court's characterization of the ambiguous waiver as permitting him to appeal a supervised release condition resting on (in his view) procedural and substantive legal error.

**B. HUNT'S CHALLENGES TO THE STAY-AWAY CONDITION ARE MERITLESS.**

Although Hunt has not waived his claims about the stay-away condition, they lack merit.

### 1. The district court did not commit plain procedural error.

Hunt did not object at the sentencing hearing to the district court's failure to substantiate the stay-away condition. Sent. Tr. 32-33 (Q: "Are there any other matters we need to take up, Counsel?" A: "I don't believe so, sir."). Accordingly, we review his procedural challenge for plain error only. *United States v. Sullivan*, 451 F.3d 884, 896 (D.C. Cir. 2006) (reviewing for plain error where defendant and his lawyer "sat in court while the judge pronounced the sentence, but they never voiced an objection on the ground that the District Court had failed to substantiate the conditions of release"); *see United States v. Bigley*, 786 F.3d 11, 13 (D.C. Cir. 2015) (per curiam) ("When a defendant fails to timely raise a procedural reasonableness objection at sentencing, this Court reviews for

plain error.").[2]  Under the plain-error standard, Hunt must demonstrate that the district court (1) "committed error"; (2) "that is plain" or obvious; (3) "that affects [his] substantial rights"; and (4) that "'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'"  *United States v. Locke*, 664 F.3d 353, 357 (D.C. Cir. 2011) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)) (second alteration in *Johnson*).  Assuming without deciding that Hunt meets the first requirement, we conclude that he cannot satisfy the other three.

Neither the United States Supreme Court nor our Court has squarely decided whether a district court must make express findings to substantiate a special condition of supervised release.[3]  That alone dooms Hunt's claim of plain

---

[2]  Hunt notes that he objected to the condition itself. Appellant's Br. 15.  That objection did not preserve his claim about the lack of explanation.  *United States v. Deatherage*, 682 F.3d 755, 763 (8th Cir. 2012) ("A general objection at sentencing to the substantive restriction imposed by a special condition is not enough to preserve an allegation that the court did not adequately explain its specific reasons for imposing the special condition."); *United States v. Watson*, 582 F.3d 974, 981 (9th Cir. 2009) (similar holding).

[3]  Our sister circuits are divided on the issue.  *Compare United States v. Falor*, 800 F.3d 407, 411 (7th Cir. 2015) (express findings required); *United States v. Martinez-Torres*, 795 F.3d 1233, 1238 (10th Cir. 2015) (same); *United States v. Salazar*, 743 F.3d 445, 451 (5th Cir. 2014) (same); *United States v. Poitra*, 648 F.3d 884, 889 (8th Cir. 2011) (same); *United States v. Miller*, 594 F.3d 172, 184 (3d Cir. 2010) (same); *United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009) (same); *United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir. 2007) (same); *and United States v. Brown*, 653 F. App'x 50, 51 (2d Cir. 2016) (unpublished summary order) (same), *with United States v. Garrasteguy*, 559 F.3d 34, 42 (1st Cir. 2009) (express findings not required where reasons can be inferred from record);

procedural error. *United States v. Terrell*, 696 F.3d 1257, 1260 (D.C. Cir. 2012) (error ordinarily cannot be "plain" unless "a clear precedent in the Supreme Court or this circuit establishe[s] its erroneous character"). To cinch matters, we have held in an analogous case that a lack of findings, even if error, was not plain error. *Sullivan*, 451 F.3d at 896 (affirming sentence where defendant did not contemporaneously object to district court's "fail[ure] to substantiate the conditions of release" and did not advance any "viable basis for ascribing plain error to" sentencing judge). We see no basis for a different conclusion here.

Nor does the lack of explanation or findings affect Hunt's substantial rights or call into question the fairness, integrity or public reputation of judicial proceedings. The district court imposed the stay-away condition moments after the parties argued about its merits. The sequence and timing strongly suggest the court endorsed the government's arguments that (1) Hunt's many crimes at Potomac Gardens warranted the condition; and (2) the condition did not unduly restrict his liberty because "[h]e hasn't lived" at the complex. Sent. Tr. 15-16. We discern no prejudice from the court's failure to say out loud that it agreed with the government. *See United States v. Balon*, 384 F.3d 38, 41 n.1 (2d Cir. 2004) (defendant suffered no prejudice from any error in court's failure "expressly [to] articulate on the record why it was imposing [certain] conditions of supervised release" because reason was "self-evident in the record"); *cf. Rita v. United States*, 551 U.S. 338, 359 (2007) ("Where a matter is . . . conceptually simple . . . and the record makes clear that the sentencing judge

---

*United States v. Betts*, 511 F.3d 872, 876 & n.8 (9th Cir. 2007) (same); *United States v. Ridgeway*, 319 F.3d 1313, 1317 (11th Cir. 2003) (similar).

considered the evidence and arguments, we do not believe the law requires the judge to write more extensively.").

## 2. The district court did not abuse its discretion under section 3583(d).

The government concedes, and we agree, that Hunt preserved his substantive challenge to the stay-away condition by objecting to it at the sentencing hearing. Nonetheless, as with most sentencing matters, the standard of review is deferential. Under 18 U.S.C. § 3583(d), a district court may impose "any condition . . . it considers to be appropriate"—including "a discretionary condition" typically associated with probation under section 3563(b)—so long as the condition:

> **(1)** is reasonably related to the [sentencing] factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
>
> **(2)** involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
>
> **(3)** is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a) . . . .

The district judge has "wide discretion when imposing terms and conditions of supervised release" under section 3583(d) because he is in the best position to "measure[] the conditions imposed against the statutorily enumerated sentencing goals." *Sullivan*, 451 F.3d at 895 (internal quotation omitted); *see Gall v. United States*, 552 U.S. 38, 51 (2007) ("The judge sees and hears the evidence, makes

credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.") (internal quotation omitted). We therefore review the substantive validity of the stay-away condition under an abuse-of-discretion standard. *United States v. Burroughs*, 613 F.3d 233, 240 (D.C. Cir. 2010); *Sullivan*, 451 F.3d at 895.

The district court did not abuse its discretion in concluding, albeit implicitly, that the stay-away condition is tailored to Hunt's criminal history, 18 U.S.C. § 3553(a)(1), will deter him from criminal conduct, *id*. § 3553(a)(2)(B), and will protect the public from further crimes at his hands, *id*. § 3553(a)(2)(C). Hunt's primary contention to the contrary is that the condition does not prevent him from dealing drugs anywhere outside Potomac Gardens. Appellant's Br. 20-21 ("[D]rug dealing is hardly a crime that knows geographical boundaries. . . . If a defendant is inclined to continue his criminal behavior while on supervised release, he certainly will find a suitable locale for his activities."). We do not agree that Hunt's potential recidivism renders the condition unreasonable. As defense counsel noted at sentencing, another condition of Hunt's supervised release prohibits him from "commit[ting] another federal, state, or local crime." Sent. Tr. 30. And it is a federal offense to deal or conspire to deal illegal drugs. *See, e.g.*, 21 U.S.C. §§ 841(a), 846. The stay-away condition dovetails with the general prohibition: the point is to make drug dealing more difficult for or less tempting to Hunt in case he decides to break the law again. The fact that he participated in so many deals at Potomac Gardens suggests he has established drug contacts there. If the stay-away condition does anything to dry up his sources of supply or his customer base, it can only help keep him out of trouble and thereby serve the purposes of sentencing. *See United States v. Watson*, 582 F.3d 974, 983 (9th Cir. 2009) ("Separating a convicted felon from negative influences in his

prior life is reasonably related to the permissible goals of deterrence and rehabilitation and is a common purpose of supervised release.").

Nor does the stay-away condition unduly restrict Hunt's liberty. 18 U.S.C. § 3583(d)(2). The Congress contemplated that a district court may require a defendant—as "a discretionary condition" of supervised release, *id*. § 3583(d)—to "refrain from frequenting specified kinds of places" and "from residing in a specified place or area," *id*. § 3563(b)(6), (13). We reject Hunt's contention that the district court went too far by "preclud[ing him] from entering a rather large section of the District of Columbia." Appellant's Reply Br. 6. For starters, "rather large" is a rather large overstatement. The condition keeps Hunt away from a single housing project, plus about an extra city block in each direction. Using a Google map to measure the metes and bounds the district court plotted, we take judicial notice that the restricted area covers about 50 acres. *See United States v. Burroughs*, 810 F.3d 833, 835 n.1 (D.C. Cir. 2016) (taking judicial notice of Google map whose "'accuracy [could not] reasonably be questioned'" for relevant purpose) (quoting FED. R. EVID. 201(b)(2)). There are 640 acres in a square mile, *see Leo Sheep Co. v. United States*, 440 U.S. 668, 686 n.23 (1979), which means the restricted area covers about 0.078 square miles. The District of Columbia encompasses about 68 square miles. *See Jones v. D.C. Armory Bd.*, 438 F.2d 138, 141 (D.C. Cir. 1970) (per curiam). In other words, the restricted area comprises just over one one-thousandth of the District. That is a minimal imposition, especially when compared to the city- and county-wide restrictions that our sister circuits have upheld in analogous cases. *See, e.g.*, *Watson*, 582 F.3d at 977-78, 983-85 (gang member prohibited from entering San Francisco); *United States v. Garrasteguy*, 559 F.3d 34, 40-44 (1st Cir. 2009) (drug dealers prohibited

from entering Suffolk County, Massachusetts) (plain-error review); *United States v. Sicher*, 239 F.3d 289, 289-93 (3d Cir. 2000) (drug dealer prohibited from entering two Pennsylvania counties) (plain-error review); *United States v. Cothran*, 855 F.2d 749, 750-53 (11th Cir. 1988) (drug dealer prohibited from entering Fulton County, Georgia).

Furthermore, like the conditions in some of the cases cited above, the stay-away condition here is not absolute. It forbids Hunt to enter Potomac Gardens and the immediate vicinity "without the prior approval of the U.S. Probation Office." Sent. Tr. 31. If he has any legitimate cause to enter the complex—e.g., to visit family—he can prevail upon his probation officer, who we presume will act reasonably under the circumstances. *See United States v. Love*, 593 F.3d 1, 12 (D.C. Cir. 2010). Hunt does not even allege that he resides or has family at Potomac Gardens. The closest he comes is his assertion that he lived there "at one point," Sent. Tr. 24, and "has been a member of the Potomac Gardens community for much of his adult life," Appellant's Br. 20. He claims no specific hardship, however, and it is hard to see how he could. His counsel acknowledged at oral argument that he did not live there at the time of the offense. Oral Arg. Recording 8:18-10:00. And to the extent he has friends there who are not involved in the drug trade, Sent. Tr. 24, he can meet them anywhere he chooses outside the restricted boundaries, which are unmistakably defined.

The district court did not plainly err in failing to explain the stay-away condition and did not abuse its discretion in imposing it. Accordingly, we affirm the court's judgment.

*So ordered*.