# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 25, 2021      Decided March 1, 2022

No. 20-3025

UNITED STATES OF AMERICA,
APPELLEE

v.

ARNOLD JACKSON,
APPELLANT

———

Consolidated with 20-3046, 21-3035

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:19-cr-00347-1)

———

*Carmen D. Hernandez*, appointed by the court, argued the cause and filed the briefs and appellant's Memoranda of Law and Fact.

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief and appellee's

Memorandum of Law and Fact were *Elizabeth Trosman*, Assistant U.S. Attorney at the time the brief was filed, and *Elizabeth H. Danello* and *Peter S. Smith*, Assistant U.S. Attorneys.

Before: RAO and WALKER, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*:  Arnold Jackson pled guilty to possession with the intent to distribute cocaine base in the District of Columbia.  After entering a plea agreement, he was sentenced to 48 months of imprisonment tailored to run consecutively to a then-anticipated, but not-yet-imposed, prison sentence in another district court.  While imprisoned, Jackson filed two motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  The District Court for the District of Columbia denied both motions.  Jackson appeals, arguing that the district court erred, both in ordering that his sentence run consecutively to a possible sentence and by denying his motions for compassionate release.  Because we conclude that Jackson waived his right to appeal his sentence in his plea agreement and that the district court did not err in denying his motions for compassionate release, we affirm.

## I.    Background

In 2003, Jackson was convicted by a jury in the Western District of Virginia of conspiring to possess with intent to distribute fifty grams or more of cocaine base.  The judge in that case originally sentenced him to life in prison. However, the judge later reduced that sentence to 192 months.  Jackson

served his term of imprisonment and began serving a five-year term of supervised release.

While still on supervised release, Jackson was arrested in the District of Columbia in possession of 49 grams of cocaine, 27 grams of methamphetamine, about one gram each of heroin and oxycodone, and drug paraphernalia. Jackson was released pending trial, anticipating that he would cooperate with the government in other investigations. No substantial cooperation materialized, but Jackson did provide some helpful information to the government.

In recognition of his efforts to cooperate, the government offered Jackson a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). This agreement, once accepted by the sentencing judge, provided for a 48-month sentence if Jackson pled guilty to possession with intent to distribute cocaine base. Jackson accepted the offer.

At Jackson's sentencing hearing, his counsel raised the point that Jackson was also facing a supervised release revocation in the Western District of Virginia for the same conduct to which he was pleading guilty in the District of Columbia. Jackson requested that any sentence imposed run concurrently to any sentence he may receive for violating the terms of his supervised release in Virginia. The sentencing judge denied that request and sentenced Jackson to 48 months of imprisonment to run consecutively to any other sentence imposed. Jackson appealed that sentence to this court.

After being sentenced in the District of Columbia, Jackson was sentenced in the Western District of Virginia to 12 months of imprisonment for violating the terms of his supervised release.

Jackson then moved his sentencing judge in the Western District of Virginia for compassionate release via 18 U.S.C. § 3582(c)(1)(A) in light of the COVID-19 pandemic. That motion was granted, but the order specifically noted that it "only addresse[d] the 12-month sentence imposed by [the Western District of Virginia] for Jackson's supervised release violation." *United States v. Jackson*, No. 5:02-cr-30020, 2020 WL 2735724, *1 n.1 (W.D. Va. May 26, 2020). Because the Western District of Virginia order had no effect on the sentence imposed in the District of Columbia, Jackson remained in custody.

Following his successful *pro se* motion in Virginia, Jackson filed a motion in the District of Columbia for compassionate release. That motion was denied, and Jackson appealed. *United States v. Jackson*, 468 F. Supp. 3d 59, 70 (D.D.C. 2020).

Jackson then filed a second, *pro se* motion for compassionate release. That motion was denied for substantially the same reasons as the first motion for compassionate release, *United States v. Jackson*, No. 1:19-cr-00347 (TNM), 2021 WL 1299439 (D.D.C. Apr. 7, 2021); more specifically, for not having shown extraordinary and compelling reasons justifying his release. Following the second denial, Jackson moved the court to reconsider the second motion for compassionate release. That motion was also denied. Jackson appealed once again.

Jackson's three appeals were consolidated without objection in this court.

## II. The Consecutive Sentence

We consider first Jackson's claim that the District of Columbia district judge did not have the authority to make his 48-month sentence consecutive to his then-anticipated, but not-yet-imposed, sentence for violating the terms of his supervised release in the Western District of Virginia. That issue has not previously been determined by this Circuit. However, before proceeding with the merits, we must address the government's argument that Jackson waived his right to appeal his sentence when he entered the plea agreement with the government.

In that plea agreement, Jackson agreed to plead guilty to unlawful possession with intent to distribute a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C). The agreement was entered into under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. If a sentencing judge accepts a Rule 11(c)(1)(C) plea agreement, the judge has agreed to impose the sentence agreed to in the plea agreement. Jackson and the government agreed to a sentence of 48 months of incarceration followed by three years of supervised release. The agreement did not refer to any other, not-yet-imposed sentence.

As a part of this plea agreement, Jackson waived many of his constitutional and statutory rights, including most of his appeal rights. In the words of the plea agreement, Jackson "agree[d] to waive the right to appeal the sentence in this case, including but not limited to any term of imprisonment, fine, forfeiture, award of restitution, term or condition of supervised release . . . ." Jackson retained the right to appeal if the sentence was "above the statutory maximum or guidelines range determined by the Court," and the right to "appeal on the basis of ineffective assistance of counsel, but not to raise on

appeal other issues regarding the conviction or sentence." Supplemental Appendix (SA) 8.

Jackson contends that the plea agreement does not foreclose his appeal for two reasons. First, Jackson argues that the sentencing judge did not properly advise him of the terms of the plea agreement, and therefore his entry into the agreement was neither knowing, intelligent, nor voluntary. Next, Jackson argues that the plea agreement is ambiguous as to whether he may appeal the imposition of a consecutive sentence and that ambiguous plea agreements should be interpreted against the drafter, i.e., the government.

## A.

A knowing, intelligent, and voluntary waiver of the right to appeal may generally be enforced. *United States v. Adams*, 780 F.3d 1182, 1183 (D.C. Cir. 2015). To ensure that a defendant understands the terms of a plea agreement, Rule 11(b) of the Federal Rules of Criminal Procedure requires a judge accepting a guilty plea to address the defendant personally in open court and "inform the defendant of, and determine that the defendant understands," among other things, "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence[.]" Fed. R. Crim. P. 11(b)(1)(N).

It is uncontested that in this case, the judge accepting Jackson's guilty plea did not fully comply with the terms of Rule 11(b)(1)(N), as he did not go over the appeal rights that Jackson was waiving by entering into the agreement. However, a "Rule 11(b)(1)(N) error at the plea hearing does not affect the defendant's substantial rights if the defendant still knowingly, intelligently, and voluntarily waived the right to appeal." *United States v. Lee*, 888 F.3d 503, 504–05 (D.C. Cir.

2018). "To determine whether the defendant knowingly, intelligently, and voluntarily waived the right to appeal, the court of appeals must examine the entire record, including both the written plea agreement and the plea hearing." *Id.* at 505.

In concluding that the entire record evidenced that the defendant's waiver was knowing, voluntary, and intelligent despite a Rule 11(b)(1)(N) error, the *Lee* court relied on the following: the "crystal clear" language of the waiver of a right to appeal the imposition of an 18-month sentence; the defendant's signature on the plea agreement; that the plea agreement stated that the defendant had read and fully understood the agreement, discussed it with counsel, and was entering the agreement voluntarily; that he was represented by an experienced defense attorney; that it is standard practice for defense counsel to discuss appeal waivers with clients prior to plea hearings; that the defendant reaffirmed to the court that he had carefully read the agreement and discussed it with counsel and did not have any questions; that he stated that he was satisfied with his counsel; and that there was no record evidence to the contrary. *Id.* at 508.

While not all of the factors relied upon by the *Lee* court are present in this case, most of them are. Jackson's signature is on the plea agreement and the plea agreement states that Jackson "read every page of this Agreement," discussed it with his attorney, and that he entered the agreement voluntarily. SA 11. Jackson stated on the record to the judge accepting his guilty plea that he was satisfied with the services of his counsel. Further, Jackson confirmed to the judge at his plea hearing that he had read the plea agreement carefully, that he understood it, and had sufficient time to discuss the plea agreement with his counsel.

At the plea hearing, Jackson's counsel was asked to summarize the terms of the plea agreement and noted on the record that the agreement "sets out the appeal rights that he's waiving. The only appeal he retains is if the Court imposes [a] sentence above . . . the statutory maximum or guideline range determined by the Court." Jackson was asked if he had "any confusion or questions about this agreement" that he would like to ask his attorney or the presiding judge; he stated that he did not. Also, like in *Lee*, Jackson was represented by an experienced criminal defense attorney; Jackson's attorney had over 25 years of experience representing criminal defendants.

The language of Jackson's plea agreement is unambiguous as to which rights he waived when he entered into it, making any error in the plea colloquy harmless. In *Lee*, the defendant sought to appeal the length of his sentence despite his clear waiver of the right to appeal a sentence within the United States Sentencing Guidelines. *Lee*, 888 F.3d at 506. In this case, it is less "crystal clear" than it was in *Lee* that Jackson waived the right to appeal a consecutive sentence because the terms consecutive and concurrent do not appear in the waiver section of the plea agreement. However, the plea agreement is clear that he agreed to waive "the right to appeal the sentence in this case." This, in combination with the multiple assurances in writing and in open court that Jackson understood the plea agreement and was entering it voluntarily, renders any error in the presiding judge's Rule 11(b)(1)(N) colloquy harmless.

Having reviewed the record in its entirety, we conclude that Jackson knowingly, intelligently, and voluntarily entered into the plea agreement with the government and that the waiver of his appeal rights is enforceable.

**B.**

Jackson further argues that even if he did knowingly, intelligently, and voluntarily enter into the plea agreement, it is ambiguous as to whether the plea agreement waived his right to appeal the imposition of a consecutive sentence.

We ordinarily dismiss an appeal falling within the scope of a valid appeal waiver, *see, e.g.*, *United States v. Adams*, 780 F.3d 1182, 1183 (D.C. Cir. 2015), but "we will not bar the door to a criminal defendant's appeal if his waiver only arguably or ambiguously forecloses his claims," *United States v. Hunt*, 843 F.3d 1022, 1027 (D.C. Cir. 2016). A plea agreement is, at bottom, a contract between the criminal defendant and the government. Therefore, we adhere to the principals of contract law in the interpretation of plea agreements. *Id.* "Ambiguity in a plea agreement, as in any other type of contract, is construed against the drafter." *Id.* (citing *United States v. Henry*, 758 F.3d 427, 431 (D.C. Cir. 2014)). An ambiguous appeal waiver cannot be knowingly, intelligently, and voluntarily agreed to. *See id.* at 1027.

Jackson primarily relies on *Hunt* to argue that the plea agreement is ambiguous as to whether it includes a waiver of his right to appeal the imposition of a consecutive sentence. In *Hunt*, the defendant was sentenced to 62 months of imprisonment and five years of supervised release with the special condition that he stay away from a particular housing complex in Southeast D.C. He appealed, challenging the special condition of supervised release imposed by the district court. *Hunt*, 843 F.3d at 1024.

The defendant in *Hunt* had also entered a plea agreement that waived some of his appellate rights with respect to his sentence. He agreed to waive "the right to appeal the sentence in this case, including any term of imprisonment, fine,

forfeiture, award of restitution, term of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined," except to the extent that the court sentenced him above the statutory maximum or guidelines range determined by the court. *Hunt*, 843 F.3d at 1025.

The *Hunt* court concluded that by waiving his right to appeal any "*term* of supervised release," *id.* at 1028 (emphasis added), the defendant "did not necessarily give up the right to appeal a *condition* of such release," *id.* Holding that the plea agreement was ambiguous and that this ambiguity was exacerbated by incorrect statements by the presiding judge during the plea colloquy about what was appealable, the *Hunt* court proceeded to evaluate the defendant's claim on the merits. *Id.* at 1028–29.

The ambiguity in Hunt's plea agreement is not present in Jackson's. Unlike in *Hunt*, the list of waivers in Jackson's plea agreement includes "the right to appeal the sentence in this case, including *but not limited to* any term of imprisonment . . . ." SA 8 (emphasis added). The plea agreement's use of the phrase "including but not limited to" eliminates any ambiguity as to whether the scope of the waiver is limited in any fashion by the list of examples that follows.

The *Hunt* court held that the word "term" in a plea agreement refers to "duration" rather than a condition. *Id.* at 1028 (comparing *Black's Law Dictionary* 1698 (10th ed. 2014) with *Webster's Third New International Dictionary*, *Unabridged*, 2358 (1993)). Unlike in *Hunt*, Jackson is appealing the duration, or term of his sentence. Whether a sentence runs consecutively or concurrently to another sentence is inherently determinative of the duration of that sentence.

Further, the plea agreement explicitly carves out two aspects of a potential sentence that Jackson did retain the right to appeal: if the sentence was above the statutory maximum or if it was above the guidelines range as determined by the court. Under the canon of contract interpretation that *inclusio unius est exclusio alterius*, it is clear from the language of the agreement that Jackson has waived the right to appeal all aspects of his sentence unless the appeal comes within one of those two exceptions.

Finally, the confusion created by the plea colloquy in *Hunt* in which the presiding judge may have misled the defendant about what appeal rights he retained did not occur in this case. As discussed above, the record supports that Jackson knowingly, intelligently, and voluntarily entered into this plea agreement. There is no reasonable way to interpret Jackson's plea agreement as exempting from the waiver the right to appeal whether his prison sentence will run consecutively or concurrently to another sentence.

In sum, we hold that Jackson unambiguously waived his right to appeal the imposition of a consecutive sentence and that he knowingly, intelligently, and voluntarily made that waiver. Therefore, we do not reach the merits of Jackson's appeal of his sentence.

## III. The Compassionate Release Motions

After being sentenced to 12 months in prison for violating the terms of his supervised release in the Western District of Virginia, Jackson filed for compassionate release in that district via 18 U.S.C. § 3582(c)(1)(A). The Virginia district court granted the motion, noting that his order addressed only "the 12-month sentence imposed by [the

Western District of Virginia] for Jackson's supervised release violation." *United States v. Jackson*, No. 5:02-cr-30020, 2020 WL 2735724, *1 n.1 (W.D. Va. May 26, 2020). Because of Jackson's sentence in the District of Columbia, he remained in custody.

Jackson then filed a motion for compassionate release in the District Court for the District of Columbia. The district court denied that motion. Months later, Jackson once again moved for compassionate release. That motion and a subsequent motion for reconsideration were both denied. Jackson, now with counsel, appeals the denial of the two separate motions for compassionate release arguing that the denials were an abuse of the judge's discretion.

We note that the government correctly asserts that Jackson's appeal from the denial of his second motion is untimely. While we agree with the government that this is the case, that defect is not jurisdictional. Since the arguments asserted with respect to that ruling are intertwined with those asserted with respect to the denial of his first motion, we will allude to both decisions in the following discussion.

Compassionate release is created and governed by 18 U.S.C. § 3582(c)(1)(A). That statute authorizes the district court to grant compassionate release under statutory circumstances. The principal requirement of the statute is that the defendant must present "extraordinary and compelling reasons [that] warrant such a reduction[.]" § 3582(c)(1)(A)(i). It also requires that the judge, in making such decision, act consistently with the sentencing requirements of section 3553(a). § 3582(c)(1)(A). It further requires that the grant of compassionate release must be consistent "with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(ii). We review the district court's decision for

"abuse of discretion." *United States v. Long*, 997 F.3d 342, 352 (D.C. Cir. 2021). However, arguments that were not raised before the district court below are reviewed for plain error. *Id.* at 353.

In this case, the district judge concluded that the defendant had not presented any extraordinary and compelling reason justifying his release. The defendant's appeal is based on the theory that the COVID-19 pandemic created such an extraordinary and compelling reason. He offered no real evidence that the presence of the disease was greater in his place of confinement than anywhere else. More importantly, it is difficult to say that the district judge abused his discretion by finding that a pandemic affecting not only the entire prison population, but the entire world, does not constitute an extraordinary and compelling reason. Presumably, if it did, we would have solved the overcrowding of prisons, as any prisoner could come asking for compassionate release.

Jackson attempts to circumvent the weakness of his claim of extraordinary and compelling reasons by stating that he suffers from obesity and sleep apnea and that these conditions put him at higher risk for serious illness should he contract COVID-19. Neither of these is an extraordinary circumstance. It certainly is not an abuse of discretion by the district judge not to have been convinced by this argument. Indeed, it is sometimes said that the nation suffers from an epidemic of obesity. *The Obesity Epidemic*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/cdctv/disease andconditions/lifestyle/obesity-epidemic.html; Kumanyika & Dietz, *Solving Population-wide Obesity*, NEW ENG. J. MED. (Dec. 3, 2020).

Appellant raises specific objections to the district judge's decisions. First, the appellant claims that the court

erred in expressing the decisions' consistency with what the court deemed the applicable policy statement from the Sentencing Commission. Appellant correctly points out that we have since determined that there is no applicable policy statement, and there was none at the time of the denial of his motion. *See Long*, 997 F.3d at 355. However, this argument was not raised below and is therefore reviewed under the plain error standard. Perhaps there may be a plain error in failure to anticipate a change in the law. *See, e.g.*, *id.* at 357. But this is not such a case. Plain error requires that the alleged error be such as could have affected a defendant's "substantial rights." *United States v. Brown*, 808 F.3d 865, 871 (D.C. Cir. 2015). The district court made plain that its decision was not based on the policy statement, but simply pointed out that it was consistent with what the court believed to be an applicable statement. Obviously then, it would not have affected the result.

Finally, the district court's rulings with respect to the compassionate release motions must be consistent with the § 3553(a) sentencing factors. 18 U.S.C. § 3582(c)(1)(A). This included an evaluation by the district court of the continuing dangerousness of the movant. Jackson asserts that the district court erred in relying on his dangerousness at the time of his earlier criminal history. This hardly appears to be error. Where a defendant has reverted to his dangerous criminal ways after having faced a life sentence that was later reduced to a term of years, it is hardly an abuse of discretion for a district judge not to be convinced that he is no longer a dangerous person.

## IV. Conclusion

In sum, we affirm the judgment on sentencing and the orders on both motions for compassionate release.